UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Richard Lagano,

                Debtor.

Case No. 13-30962
Chapter 7

Shawn J. McMurray,

                Plaintiff,

v.

Richard Lagano,

                Defendant.

Adv. Proc. No. 13-50015

Appearances:

David P. Antonucci, Esq., Attorney for Plaintiff
Antonucci Law Firm
12 Public Square
Watertown, New York  13601

Anthony Inserra, Esq., Attorney for Debtor/Defendant
531 Washington St., Ste. 3401
Watertown, New York  13601

### Memorandum-Decision and Order

Shawn J. McMurray ("Plaintiff") filed this adversary proceeding seeking a determination that a disputed debt alleged to be owed to him by Richard Lagano ("Defendant" or "Debtor") be excepted from discharge under 11 U.S.C. §§ 523(a)(4) and (a)(6).[1] At trial, Plaintiff abandoned his § 523(a)(4) cause of action, electing to proceed solely under § 523(a)(6).[2] Plaintiff requests this court to fix the amount of the debt allegedly owed, which is premised upon a state law conversion claim ("Debt"), and to direct the return of certain personal property alleged to be in

---

[1] Plaintiff's adversary cover sheet (Official Form 104) indicates that the nature of the suit would include an objection to Debtor's discharge pursuant to 11 U.S.C. § 727. However, Plaintiff has not asserted any such cause of action at any point in this proceeding. *See* Docs. 1, 27. Accordingly, the court need not rule on Debtor's motion at trial for dismissal of the § 727 claim.
[2] Unless otherwise noted, all sectional references are to Title 11 of the United States Code, §§ 101-1532.

1

the possession of the Debtor. Debtor answered the complaint, denying the material allegations and responding that the complaint is without merit. Both parties seek attorneys' fees.

The court conducted a trial on the complaint on March 11, 2014, at which the court heard the testimony of Plaintiff, Wanda Way and Debtor. For the reasons that follow, the court (i) finds the Debt dischargeable, which obviates the need to fix the amount; (ii) denies the requests for attorneys' fees; and (iii) directs Defendant to turn over certain items of Plaintiff's property that remain in his possession.

This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bank. P. 7052.

*Jurisdiction*

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(2)(I) and 1334(b).

*Background Facts*

Plaintiff is an automobile mechanic who worked on-site at Debtor's prior business, American Auto, which was a used car lot and automotive repair shop operated as a sole proprietorship. Joint Stipulation ("Stip."), ¶¶ 1-2. In August 2011, pursuant to oral agreement between the parties, Plaintiff brought certain of his tools and equipment to the business premises to repair used cars for the Debtor. The parties' "at will" agreement was without term.

Additionally, Plaintiff and Debtor arranged to purchase certain automotive shop equipment from Eagle Equipment (the "Equipment"). The Equipment consisted of two 9000 lb. car lifts, a tire machine and a 60-gallon air compressor. Debtor purchased the Equipment on behalf of the business using the credit card of Wanda Way, Plaintiff's fiancée. Stip., at ¶ 4. Plaintiff reimbursed Ms. Way for the Equipment purchase.

As part of the repair operations, Plaintiff brought three vehicles onto the American Auto lot. These vehicles included a 1999 Mercury Sable and two 2001 Dodge Neons (the "Vehicles"). All three vehicles were in a state of significant disrepair and either fully or partially inoperable. None had active vehicle registrations. Plaintiff never produced certificates of title to support his claimed ownership of the Vehicles.

American Auto struggled financially from its inception. In December 2011, Debtor obtained a $40,000 business loan from the Jefferson County Industrial Development Agency ("Jefferson County"), which was secured primarily by Debtor's residence and, additionally, by the assets of American Auto. Debtor never drew a salary from American Auto.

Within four months the parties' business relationship soured and Plaintiff unilaterally terminated their agreement. Debtor changed the locks to the premises due to Plaintiff's purported threats against the business. Over the ensuing months, the parties had only limited, heated communications. Plaintiff made no formal, written demand for the return of his property that remained at American Auto, nor were arrangements made to provide Plaintiff the opportunity to retrieve the same.

In late March 2012, Plaintiff arrived unexpectedly at the American Auto premises to investigate rumors that Debtor was permitting Plaintiff's property to be used for automotive repair work. Plaintiff did not attempt to retrieve any property that day. The parties' interaction that day devolved into a heated exchange, after which Plaintiff left the premises. Shortly thereafter, the New York State Police became involved stemming from allegations that Plaintiff had assaulted Debtor while at the premises. Criminal charges were filed and then dismissed. The state police, however, remained involved at the behest of the parties and facilitated the return of a substantial portion of Plaintiff's property. Per the suggestion of the state police,

Debtor placed Plaintiff's belongings outside the garage for Plaintiff to retrieve. Debtor photographed the items[3] and then left the premises to avoid a confrontation with Plaintiff. Plaintiff subsequently arrived and removed all the items that Debtor placed outside. Debtor did not make the Equipment available to Plaintiff, nor did Plaintiff remove the Vehicles.

On April 9, 2012, Plaintiff commenced a state court action against the Debtor and Jefferson County. Plaintiff's Ex. 1. Plaintiff asserted causes of action for breach of fiduciary duty and conversion, interference with business relations, *prima facia* tort, and breach of contract. In addition to judgment in the amount of $50,000, Plaintiff sought the recovery of tools and equipment allegedly in Debtor's possession. The state court action was stayed by Debtor's bankruptcy filing.

Attached to the state court complaint, that was introduced as evidence in this proceeding, is a two-page handwritten inventory, listing items that Plaintiff alleged are items improperly retained by Debtor. Plaintiff's Ex. 1, Ex. A to McMurray Affidavit (the "Inventory"). The Inventory includes many items that were retrieved by Plaintiff with the assistance of the state police.[4] Included as Appendix A is a list of items that are alleged not to have been returned, excluding the Equipment and Vehicles.

Upon filing the state court action, Plaintiff sought a preliminary injunction to prohibit Debtor from selling or transferring the property itemized in the Inventory. After a hearing, the state court entered an order granting Plaintiff interim injunctive relief. Plaintiff's Ex. 3 (the "State Court Order").

American Auto ceased business operations on May 1, 2012. Stip., ¶ 5. Debtor's landlord permitted the business to prematurely break the three-year lease, provided all property was

---

[3] Defendant's Exs. B-1 – B-46.
[4] The Inventory is preceded by a short typewritten page entitled "Exhibit A." Upon the court's inquiry, Plaintiff's counsel confirmed at trial that the typewritten page overlapped with the Inventory.

4

removed and the premises vacated. In order to comply, Debtor removed the Vehicles from the premises. Given Debtor's uncertainty regarding ownership and the poor condition of the Vehicles, Debtor had the Vehicles scrapped.[5]

Debtor remains in possession of the Equipment, except for one of the car lifts. Debtor sold the single car lift prior to vacating the business premises and the entry of the State Court Order.[6] Debtor scheduled the remaining Equipment as business equipment on his schedule B and exempted the same on Schedule C–List of Exempt Property. Case No. 13-30962, Doc. 1.

Debtor also remains in possession of select items that Plaintiff asserts belong to him, specifically (1) a wireless camera, (2) a front-axle from a 2001 Jeep 4x4, (3) a 2.4 liter turbo engine motor and (4) a hub assembly. *See* Defendant's Exs. B-41 – B-46. Apart from the remaining pieces of Equipment, these are the only items that are in Debtor's possession to which Plaintiff has asserted a claim. Though Debtor initially contested Plaintiff's ownership of these four items, the Debtor is now willing to turn them over.[7]

*Arguments of the Parties*

Plaintiff asserts that Debtor willfully and maliciously converted certain items of his personal property and, therefore, seeks a determination of nondischargeability pursuant to § 523(a)(6). He asserts that Debtor sold certain items and retained the proceeds. Due to Debtor's retention or sale of certain tools, Plaintiff alleges that he could not obtain employment. Plaintiff asserts that he was "locked out" from the American Auto premises and that police intervention was required in order to facilitate the return of some—but not all—of his property.

---

[5] Debtor testified that the Vehicles were in "very bad shape" and had to be removed by flatbed truck. Asked by the court how he could scrap the Vehicles when he did not possess title, Debtor explained that production of title is not necessary to scrap a vehicle that is more than 10 years old.

[6] Debtor could not recall the name of the individual to whom he sold the car lift. Debtor did not retain a copy of the receipt from the purchase.

[7] Debtor has maintained that he has been prepared to turn over these items to Plaintiff for some time. He had not yet done so as he was awaiting Plaintiff to provide proof of ownership.

5

Additionally, Plaintiff contends that Debtor violated the State Court Order, which, standing alone, justifies a determination in his favor.

Debtor contends that Plaintiff has failed to prove his claim and, therefore, the complaint should be dismissed. Debtor asserts that neither Plaintiff's nor Ms. Way's testimony prove the asserted claim. Among other things, Debtor notes that Plaintiff, who has been convicted of false impersonation, was not truthful in either his state court complaint or the instant complaint regarding the accuracy of the Inventory. Debtor also asserts that there is no valid proof of ownership or value of any of the items allegedly not returned to Plaintiff. As to the Equipment, Debtor asserts that Plaintiff does not have standing to assert a claim. Instead, if a claim exists, it belongs to Ms. Way, who asserts no claim against the Debtor. Finally, Debtor asserts that he "went out of his way" to return Plaintiff's property. Although he argues that there is no evidence establishing that he dissipated any of Plaintiff's assets, Debtor notes that the "only potentially actionable items" are the Vehicles, which he scrapped upon vacating the premises.

Both parties claim that they are entitled to attorneys' fees and costs.

## *Discussion*

The privilege of a discharge and the promise of a fresh start for the "honest but unfortunate debtor" is one of the central tenets underlying bankruptcy. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). "[E]xceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007). A creditor seeking a determination of nondischargeabilty under § 523(a) bears the burden of proof and must prove its case by a preponderance of the evidence. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

6

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to property of another entity." "The terms 'willful' and 'malicious' are treated as separate elements and both must be satisfied in order for the creditor to prevail." *Rozanski v. Miga (In re Miga)*, Adv. Proc. No. 09-80066, 2011 WL 204896, at *5 (Bankr. N.D.N.Y. Jan. 21, 2011); *see Ball*, 451 F.3d at 69. The term "willful" is narrowly construed, requiring "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). "Malicious" as used in the statute "mean[s] 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.' Malice may be implied 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.' " *Ball*, 451 F.3d at 69 (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir. 1996)).

Based upon the evidence adduced at trial viewed in light of the applicable standards, the court finds that Plaintiff has failed to satisfy his burden to demonstrate that Debtor inflicted willful and malicious injury upon him by converting property purportedly belonging to Plaintiff.

Plaintiff places great weight on his contention that, under New York State tort law, Debtor converted his property. Even assuming that is true, it is not conclusive of the issues presented. Whether a debt is dischargeable in bankruptcy is governed by federal law, not state law. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991). As courts have said, "[n]ot all unlawful conversions of property . . . will give rise to relief under § 523(a)(6), because unlike a tort action, bankruptcy law requires a culpable state of mind and a specific motivation by the debtor in order for the conversion to be actionable." *Miga*, 2011 WL 204896, at *5; *see Bd. of Tr., Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 22 (Bankr. N.D.N.Y. 2008); *see generally Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331–32 (1934).

Plaintiff's arguments are based, in large part, on unsubstantiated allegations or perceived deficiencies in Debtor's proof. He claims, for example, that Debtor admitted he did not own any of the subject property. Debtor made no such admission; furthermore, at least as to the Equipment, Debtor claimed ownership on the part of American Auto. Plaintiff emphasizes that Debtor failed to produce (i) any written communication to substantiate Debtor's claim that Plaintiff threatened damage to the premises or Debtor's interests which might warrant locking out Plaintiff from the business, or (ii) a copy of a certified letter purportedly sent to Plaintiff inviting Plaintiff to retrieve his property under third-party supervision.[8] Plaintiff argues that because Debtor failed to produce "a single financial record, communication, record of sale, or other document," the court should discount Debtor's testimony and reject his defenses.[9]

Contrary to Plaintiff's suggestion, the burden in this proceeding does not lie with Debtor. Debtor is not under any obligation to prove Plaintiff's contentions false, such as proving and legitimizing financial transactions Plaintiff alleged occurred. For that matter, Debtor's alleged failure to claim or prove ownership in the subject property does not inexorably lead to the conclusion that Plaintiff held rightful title and, thus, was unjustifiably deprived of his property.

Plaintiff also asserts that Debtor admitted that the scrapping of the Vehicles and the sale of the single car lift violated the State Court Order, which, standing alone, justifies a determination in his favor.[10] Again, Debtor made no such admission. Instead, Debtor testified that, when he appeared before the state court, he disclosed that the sale of the car lift and

---

[8] Although unclear if it is the referenced certified letter, Plaintiff's Affidavit, sworn to January 13, 2012, submitted in the state court action acknowledges receipt of a letter from Debtor regarding Plaintiff's property. Plaintiff's Ex. 1, McMurray Affidavit, ¶ 13. Of note, Plaintiff submitted a copy of correspondence from Debtor dated January 11, 2012, as a possible exhibit at trial; however, the letter was not offered and will not be considered.

[9] Plaintiff's Reply Memorandum (Doc. 27), p. 4.

[10] Plaintiff's papers make veiled suggestions as to possible preclusive effect of matters decided in the state court. As indicated herein, the elements of a state law conversion claim are not identical to those of a nondischargeability claim under § 523(a)(6). More importantly, however, there is no evidence of a judgment or any final decision on the merits by the state court that could possibly have preclusive effect. The only evidence before the court of a decision by the state court is the State Court Order, which granted merely interim injunctive relief.

scrapping of the Vehicles had already occurred.[11] Accordingly, Debtor attested that the State Court Order was never intended to apply to the Vehicles. Plaintiff has offered no evidence to contradict Debtor's assertions. The State Court Order does not reference any specific property; instead, it incorporates the Inventory by reference. Plaintiff acknowledges, however, that the Inventory includes many items that were returned before the commencement of the state court action. The court does not dispute that a debtor's violation of a court order might justify a determination of nondischargeability under § 523(a)(6). *See, e.g., Cricket Commc'n v. Deb (In re Deb)*, Adv. Proc. No. 11-50110, 2012 WL 1664235, at *4 (Bankr. N.D.N.Y. May 11, 2012). However, Plaintiff failed to establish a violation here.

*Hand Tools & Assorted Property (Appendix A)*

Plaintiff could not—with specificity—identify all the items of his property that Debtor allegedly converted, nor—with the exception of matters related to the Equipment and the Vehicles— did he identify any transaction in which Debtor allegedly sold or transferred the unreturned items. Plaintiff relies solely on inferences that he would have the court draw from his testimony that (i) certain items of his property were not returned and (ii) the tool boxes that were returned, were returned empty. Plaintiff's testimony is contradicted, however, by the photographs submitted by Debtor as evidence of the items which were returned with the help of the state police. Admitted into evidence without objection, these photographs depict, inter alia, numerous tools contained in toolbox drawers, *e.g.* wrenches, pliers and screwdrivers, as well as boxes filled with paints/automotive fluids and a set of storage shelves.[12] Further, Debtor testified that he made arrangements to return all property he believed belonged to the Plaintiff and that all items placed outside for retrieval were claimed by Plaintiff. Nevertheless, Plaintiff asserts that

---

[11] Plaintiff notes that Debtor could not recall the exact date of the sale of the single car lift. Although true, Debtor testified that the transaction occurred before the state court injunction was issued.

[12] *See, e.g.*, Defendant's Exs. B-1, B-2, B-6, B-7, B-9, B-12, B-13, B-16 – B-19, B-22, B-26 – B-34 and B-37.

approximately $20,000 in tools and equipment were not returned and, thereafter, were sold by Debtor who retained the proceeds.

The court finds that Plaintiff has failed to show that Debtor converted the majority of the items listed in Appendix A. Plaintiff could not—with any reasonable certainty—identify a substantial portion of the property allegedly converted. Further, he failed to establish that Debtor unlawfully retained possession of the property, nor did he describe any transaction in which Debtor sold or transferred his property. *Cf. In re Saffron*, No. 10-09180, 2010 WL 5606730, at *2 (Bankr. W.D. Mich. Dec. 26, 2010) (disallowing claim of the debtor's ex-husband for various tools that ex-husband alleged debtor converted because ex-husband failed to adduce evidence "beyond his own suspicions" that debtor had possession or disposed of the tools). Thus, as to these items, Plaintiff has suffered no injury upon which to base a § 523(a)(6) claim.

Excepted from the above finding are those select items that Debtor indicates remain in his possession. Defendant's Exs. B-41 – B-46. Debtor claims no present interest in these items[13] and, although he previously challenged Plaintiff's ownership, Debtor now acknowledges Plaintiff's claims and is prepared to release these items to Plaintiff. Thus, the court directs the Debtor and his counsel, with the help of Plaintiff's counsel, to arrange for the turnover of these items to Plaintiff.[14] As stated above, however, that finding is not dispositive of Plaintiff's claim. *See Miga*, 2011 WL 204896, at *5; *Parker*, 388 B.R. at 22.

Even as to these latter items, Plaintiff has failed to establish that Debtor's acts were both willful and malicious. There is little in the record to suggest that Debtor intended to injure Plaintiff so as to satisfy the "willful" element. Plaintiff made no demands of Debtor for the

---

[13] Debtor testified that he purchased the wireless camera depicted in Defendant's Ex. B-41. He stated, however, that he had no need for the camera and would turn over the same to Plaintiff. Debtor made no claim to the remaining items.

[14] The four items, depicted in Defendant's Exs. B-41 through B-46, are (1) a wireless camera, (2) a front-axle from a 2001 Jeep 4x4, (3) a 2.4 liter turbo engine motor and (4) a Parts Master hub assembly.

10

return of his property prior to March 31, 2012, despite the claim that without his tools, he could not accept certain offers of employment.[15] Although Debtor may have been aware that Plaintiff would need his tools to obtain future employment, there is nothing to suggest that Debtor intentionally prohibited Plaintiff access to his tools so as to prevent him obtaining employment.

Furthermore, Debtor provides justifications for his actions, which Plaintiff fails effectively to refute, thus negating a finding that Debtor's actions are "malicious" when considered in the context of the attendant circumstances. Debtor explained that he "locked out" Plaintiff due to threats Plaintiff made. When it became clear that the parties required third-party intervention, Debtor cooperated with the state police to return those items he believed to be Plaintiff's. As to those few items remaining in his possession, Debtor stated that he was uncertain who rightfully owned the items and that he had offered them to Plaintiff, provided Plaintiff could prove he owned them. Further, during the four month period between Plaintiff's termination of the agreement and the closure of the business, Debtor was focused upon his attempts to save the business and, in the latter few weeks, upon extricating himself from the premises to take advantage of the early termination of the lease proffered by the landlord, thereby minimizing addition losses to the business.

*Equipment*

As an initial matter, the court rejects Debtor's contention that Plaintiff lacks standing as a creditor with regard to the Equipment. Although Ms. Way was the original creditor with respect to the unsecured loan used to purchase the Equipment, it is undisputed that Plaintiff repaid Ms.

---

[15] Plaintiff's argument is belied by his own testimony. Plaintiff acknowledged that, generally, requests for automotive repair work slowed during the winter months. Plaintiff acknowledged that he picked up the items that Debtor placed outside the premises, which the photographs indicate included numerous hand tools. Although Plaintiff testified that he could not accept offered employment because he lacked the proper tools, he also testified that when he returned to work, he was able to purchase tools that he needed. Lastly, he indicated that during his unemployment he was able to perform repair work on his own vehicles.

Way, in full, on the loan. The Equipment was purchased for the business, specifically to facilitate the automotive repair work to be contributed by Plaintiff. It is uncontested that Plaintiff was instrumental in obtaining the loan from Ms. Way for the benefit of the business. Accordingly, on these facts, the court finds that Plaintiff is equitably subrogated to Ms. Way's rights as an unsecured creditor of the estate. *See generally Liberty Mut. Ins. Co. v. Borsari Tank Corp.*, 248 F.2d. 277, 289 (2d Cir. 1957) (citing *Gerseta Corp. v. Equitable Trust Co.*, 241 N.Y. 418, 425–26 (1926)); *Corrales v. Sanchez (In re Sanchez)*, 365 B.R. 414, 419 (Bankr. S.D.N.Y. 2007) (discussing doctrine of equitable subrogation under New York law).

Although Plaintiff claims ownership of the Equipment, it has been stipulated that Ms. Way authorized the loan to purchase the Equipment "for the business." Stip. ¶ 4.[16] Plaintiff produced no documentary evidence demonstrating clear title to the Equipment or a security interest therein. In contrast, Debtor's sworn schedules and Defendant's Ex. A[17] indicate that title to the Equipment vested unencumbered in American Auto. Plaintiff does not allege fraud on Debtor's part in regard to the purchase of the Equipment; instead, he asserts that Plaintiff improperly collateralized the Equipment as part of the Jefferson County loan.[18] In any event, assuming arguendo that title vested in Plaintiff, the evidence adduced indicates the Debtor believed that the Equipment belonged to American Auto. Accordingly, any interference with Plaintiff's property rights would have been without knowledge that his conduct was wrongful and, therefore, without the culpable state of mind required to sustain a § 523(a)(6) cause of action. *See Miga*, 2011 WL 204896, at *5.

---

[16] *See also* Way Affidavit, ¶ 5, included as part of Plaintiff's Ex. 1, in which Ms. Way states that she permitted Debtor to use her credit card to acquire the Equipment.
[17] Ms. Way claimed in her testimony that her signature on the document was not made by her. Yet, Plaintiff's counsel failed to object on any ground to the admission of Defendant's Ex. A. The court need not resolve the issue as it relies on the exhibit only to the extent of determining Debtor's state of mind in regard to the Equipment.
[18] That Debtor might have violated the terms of his security agreement with Jefferson County is irrelevant to this proceeding. Any injury caused thereby was inflicted upon Jefferson County, not the Plaintiff.

12

*Vehicles*

Although Plaintiff claims title in the Vehicles, no certificates of title were produced. Yet, assuming that Plaintiff could have produced the titles, the court finds that under the circumstances presented, Plaintiff abandoned any interest in the Vehicles by his failure to remove them from the business premises, or make arrangements for their removal.

Assuming arguendo that Debtor converted the Vehicles by scrapping them, the court finds Debtor did not act willfully or maliciously. Debtor testified that he was uncertain who owned the Vehicles. Plaintiff's failure to remove the Vehicles from the premises suggested that Plaintiff made no claim to them. Further, Debtor stated that he scrapped the Vehicles in his effort to clear the lot so that he could break the lease and avoid additional losses to the business. Debtor also testified that it was legally permissible, even without title, to scrap vehicles provided they were more than 10 years old. Based upon these facts, the court finds that Debtor's actions were neither willful nor malicious.

In sum, based upon the evidence adduced at trial, the court finds that Plaintiff has failed to meet his burden to establish a § 523(a)(6) cause of action. The court has considered the record in this case and, as required by controlling case law, resolved any doubts in favor of the Debtor. *See Hyman*, 502 F.3d at 66. While the court is not prepared to conclude that Debtor "went out of his way" to return the items to the Plaintiff, there is not sufficient evidence establishing that Debtor wrongfully dissipated Plaintiff's assets.

The court notes that the quality and completeness of the record in this matter leaves much to be desired. It is clear that the parties entered into their business arrangement with high hopes, but scarce resources. When the grand plan faltered, the relationship disintegrated and,

13

unsurprisingly, acrimony ensued. The controversy underlying the instant complaint appears, in this court's opinion, the natural result of good intentions gone terribly wrong.

### *Requests for Attorneys' Fees*

Both parties have requested an award of attorneys' fees and costs associated with litigating this proceeding. "Deviation from the American Rule that each side bears the expense of its attorney's fees requires either a statutory or contractual basis." *Parker*, 388 B.R. at 22. Here, neither party has identified a proper basis for the court to assess fees and costs. In any event, based on the record, the court finds no reason to deviate from the American Rule.

### *Conclusion*

Plaintiff's cause of action pursuant to § 523(a)(6) is dismissed for failure to satisfy his burden, and his remaining causes of action are deemed abandoned. Accordingly, the complaint is dismissed in its entirety. The parties' requests for attorneys' fees are denied. A separate judgment dismissing the complaint shall issue.

Under supervision of counsel, Debtor shall turn over those select items of property identified in footnote 14 by not later August 1, 2014.

Dated: July 11, 2014
      Syracuse, New York

                           Margaret Cangilos-Ruiz
                           United States Bankruptcy Judge